IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America, | ) |
| | ) |
| | ) No. 16 CR 337 |
| v. | ) |
| | ) Judge Ronald A. Guzmán |
| Manuela Chavez, | ) |
| Defendant. | ) |

# MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendant's motions for judgment of acquittal notwithstanding the verdict [166] and a new trial [167] are denied.

# STATEMENT

Manuela Chavez was charged with conspiracy to possess with intent to distribute heroin and cocaine (Count One) and distribution of heroin (Count Two). After a three-day trial, a jury convicted her of both counts. Chavez moves for judgment of acquittal notwithstanding the verdict and a new trial under Federal Rules of Criminal Procedure ("Rule") 29 and 33. Chavez did not file replies in support of her motions, so the Court rules without them.

**Motion for Judgment of Acquittal Under Rule 29**

A motion for a judgment of acquittal is appropriate if "the evidence is insufficient to sustain a conviction." Fed. R. Crim. Proc. 29(a). A court must "uphold the jury's verdict if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Miller*, 782 F.3d 793, 797 (7th Cir. 2015). "[A] defendant seeking a judgment of acquittal faces a 'nearly insurmountable hurdle.'" *United States v. Garcia*, 919 F.3d 489, 496 (7th Cir. 2019) (internal quotation marks and citations omitted).

Chavez contends that she is entitled to a new trial because the government's evidence at trial was insufficient to prove beyond a reasonable doubt that she was guilty of Counts One and Two. The jury heard the testimony of Willie Slater, a confidential informant, that he had delivered tens of thousands of dollars to Chavez in exchange for drugs on several occasions. Slater testified that these transactions took place at Roma III, the store Chavez owned and operated with her aunt and codefendant, Rosalinda Perez. Slater's testimony was corroborated by a video and audio recording he made at the request of the government, which the jury watched and heard. The video of the relevant transaction on August 28, 2015 showed Slater entering Roma III and, at Perez's direction, walking into the back office where Chavez, also at Perez's direction, was retrieving an item from a box. After wrapping the item in tissue paper and putting it in a shoe box, Chavez told Slater she would give it to him in front at the cash register.

Slater then went to the cash register to purchase socks. After Perez rang him up and handed him a plastic bag with the socks inside, Chavez appeared and handed Slater another bag. Slater then left the store. Special Agent Ben Milligan testified that upon Slater's exit from Roma III that day, Milligan and another agent met Slater and took possession of the two bags: one containing socks and another with a kilogram brick of heroin wrapped in tissue paper. The government also presented bank records and documentary evidence from the state of Illinois showing that Chavez and Perez owned the store and were two of only three Roma III employees.

Viewing this evidence in a light most favorable to the government, a rational jury could have found that Chavez was guilty of Counts One and Two of the superseding indictment.

**Motion for a New Trial Under Rule 33**

Rule 33 allows a new trial "if the interest of justice so requires," which has been interpreted to require a new trial where "the evidence preponderates so heavily against the defendant that it would be a manifest injustice to let the guilty verdict stand." *United States v. Conley*, 875 F.3d 391, 399 (7th Cir. 2017) (citation and internal quotation marks omitted). In deciding a Rule 33 motion, the Court may consider the credibility of the witnesses. *Id*. "[T]he exercise of power conferred by Rule 33 is reserved for only the most extreme cases." *Id*.

    A.    <u>Government's Rebuttal During Closing Argument</u>

Chavez first asserts that statements during the government's rebuttal of the defense's closing argument were inappropriate or misstated the evidence, thus resulting in a miscarriage of justice. The Seventh Circuit analyzes in two steps claims of misconduct relating to prosecutors' statements: "First, [the Court] determine[s] whether the prosecutor's comments were improper standing alone. Second, [the Court] ask[s] whether the remarks in the context of the whole record denied the defendants the right to a fair trial." *United States v. Kelerchian*, 937 F.3d 895, 916 (7th Cir. 2019). Factors the Court looks at to determine if the relevant statement deprived a defendant of a fair trial include "1) the nature and seriousness of the misconduct; 2) the extent to which the comments were invited by the defense; 3) the extent to which the prejudice was ameliorated by the court's instruction to the jury; 4) the defense's opportunity to counter any prejudice; and 5) the weight of the evidence supporting the conviction." *Id*. at 916-17 (citation and internal quotation marks omitted).

Chavez initially points to the government's assertion that the defense attorney unfairly parsed statements "like defense lawyers are paid to do."[1] Chavez characterizes this statement as

---

[1] Chavez did not have the benefit of the trial transcript at the time she filed her motion. The government's statements were as follows: "Now, do you remember when Agent Hedges was on the stand and the defense tried to impeach him with a little parsing of words that defense attorneys love to do. . . . Just because [Willie Slater] didn't use the exact words on the tape. That's parsing. That's something defense attorneys do. Don't be distracted by it. . . . So let's

2

"highly pejorative, completely inappropriate and designed to bias the jury against [Chavez] and her attorneys." (Def.'s Mot. New Trial, Dkt. # 166, at 2.) The Court finds that the government's statements were not improper standing alone. Contrary to Chavez's assertion, the statements were not a personal attack but an observation about defense lawyers generally. *See United States v. Bloom*, 846 F.3d 243, 254 (7th Cir. 2017) (government's statement that defense counsel's cross-examination was repetitious and "practically bordering on a waste of the jury's time[,]" and its subsequent assertion that defense counsel was putting up a "smoke screen" were not improper because the comments "criticized defense counsel's tactics, not defense counsel personally," which is "permissible."). Even if the statements were improper standing alone, they did not deprive Chavez of a fair trial; they were not outrageous or extreme and were made during closing argument, which the jury was told constituted an opportunity for the parties to argue their interpretation of the facts. The Court denies this basis for relief.

Chavez next challenges the government's "repeatedly and improperly vouch[ing] for Slater during its rebuttal argument." (Def.'s Mot. New Trial, Dkt. # 166, at 3.) Chavez contends that in response to her assertion that Slater changed his testimony regarding how many times he had received drugs from Chavez, the government improperly implied that if Slater had altered his testimony between direct examination and cross-examination, the government would have "yanked him off the stand." According to Chavez, the government "essentially invoked [its] prestige to vouch for the fact that Slater was telling the truth . . . ." (*Id*.) The trial transcript shows that the government, in response to Chavez's assertion that Slater was not credible because his story changed as to how many drug transactions he had engaged in with Chavez and Perez, stated as follows: "And if [Slater] had gotten on the witness stand and told you, you know what, I got it wrong, . . . the defendant is really the head of the whole operation. Yoink. Plea agreement is gone, he is in prison for the rest of his life. If he gets up and says, it wasn't four to seven times, I got drugs from her 15 to 20 times. Goodbye. You're in prison for the rest of your life." (9/19/19 Trial Tr., Dkt. # 170, at 50-51.) In other words, if Slater had drastically altered his story while testifying, the government would have called him off the stand and rescinded his plea agreement.

"A prosecutor may not vouch for a witness by personally endorsing that witness's truthfulness, or by implying that facts not in evidence support the witness's credibility." *United States v. Briseno*, 843 F.3d 264, 272 (7th Cir. 2016). Neither occurred here. The existence of and resulting incentives created by the plea agreement were fully examined during Slater's testimony, both on direct and cross-examination. "It is well established that the government can 'point out that its witnesses, under their plea agreements, are required to testify truthfully.'" *Id.* The government's reference to the number of times Slater testified that he had engaged in transactions at Roma III was made not to affirm which number was accurate, but to state that had Slater testified to facts that were substantially different from those supporting his plea, the

---

talk about the things that matter, the things that the human mind holds onto when you're remembering things, and not the little details. The distinctions without a difference that defense attorneys make their living on." (9/19/19 Trial Tr., Dkt. # 170, at 44-45, 52.)

3

government could have revoked Slater's plea agreement. Nor did the government ever personally vouch for Slater's credibility. Because no improper vouching occurred – and even if it had, it would not have deprived Chavez of a fair trial – the Court denies this basis for relief.

Chavez also argues that the government should not have referred to firearms in its rebuttal argument because Chavez was not charged with a firearms offense. Chavez asserts that the one reference to firearms was prejudicial and violated her right to due process, as demonstrated by the jury's note indicating that they were concerned that Chavez knew their names and addresses. The relevant reference by the government was as follows:

> You heard testimony that Willie Slater cooperated against many, many people. Many people other than those people at Roma III. That he bought drugs from many, many different people. That he bought firearms from a lot of different people.

(9/19/19 Trial Tr., Dkt. # 170, at 48-49.) The Court is not persuaded that the government's lone reference to firearms to explain why Slater may not have remembered every detail of his interactions with Chavez and Roma III deprived Chavez of a fair trial. The comment did not implicate Chavez and was made in response to Chavez's argument that Slater was not credible because he kept changing details of his story just weeks before trial. This basis for relief is denied.

### B. Exclusion of Heroin Evidence

Before trial, the Court denied Chavez's motion to exclude the heroin that Slater testified he purchased from Perez on August 16, 2015, and which he handed over to the government the next day. Chavez argues that the heroin should have been excluded on the grounds that it had been tampered with and lacked "any acceptable chain of custody." (Def.'s Mot. New Trial, Dkt. # 166, at 5.) But "[m]erely raising the *possibility* of tampering is not sufficient to render evidence inadmissible; the possibility of a break in the chain of custody of evidence goes to the weight of the evidence, not its admissibility." *United States v. Prieto*, 549 F.3d 513, 525 (7th Cir. 2008) (citation and internal quotation marks omitted). Defense counsel noted his concerns to the jurors regarding the reliability of the heroin as evidence of Chavez's wrongdoing, and it was up to the jurors to determine whether to believe the government or Chavez. Therefore, the Court denies this argument for a new trial.

### C. Co-Conspirator Statements

Chavez last challenges the Court's order overruling her pretrial objections to the introduction of co-conspirator statements under Federal Rule of Evidence ("FRE") 801(d)(2)(E). "For a co-conspirator's statements to be admissible under FRE 801(d)(2)(E), the government must establish by a preponderance of the evidence (1) that a conspiracy existed, (2) that the defendant and the declarant were members of the conspiracy, and (3) that the statements were made in furtherance of the conspiracy." *United States v. Pust*, 798 F.3d 597, 602 (7th Cir. 2015).

In its motion seeking admission of the statements, the government submitted the video of Slater's August 28, 2015 visit to Roma III, detailed above. The Court found that "Chavez's conduct during this transaction . . . leads to the inference that Perez had instructed Chavez as to what she should do upon Slater's arrival, or that Chavez already knew what to do from prior experience . . . ." *United States v. Perez*, No. 16 CR 337, 2019 WL 2360931, at *2 (N.D. Ill. June 4, 2019). As the Court stated, "Chavez knew to hold onto the box and not transfer it to Slater until she could do so in a manner that would indicate to any observer that the transfer was merely part of an ordinary purchase of merchandise at the front of the store." *Id*. The Court noted:

> In her objection to the *Santiago* proffer, Chavez offers no reasonable explanation as to why she would willingly engage in this subterfuge if she was unaware of the illegal nature of the transaction. It is, of course, possible that she merely followed Perez's explicit instructions without ever asking why she was being instructed to perform this unusual sequence of events, but that is not the most likely explanation. Nor is it likely that Perez would trust Chavez to show Slater the heroin he was being given but not actually give it to him until a sham purchase could be performed if Chavez was not a willing participant in the conspiracy.

*Id*. The Court stated that the government was planning to show that "Chavez also received large sums of money from Slater as payment for the fronted drugs" and that Chavez and Perez were partners in Roma III, and it was therefore "highly unlikely that Perez would be able to run a large narcotics-trafficking conspiracy for such a long period of time without her partner, Chavez, being aware of what she was doing." *Id*. The Court found that the government had demonstrated Chavez's participation in a conspiracy by a preponderance of the evidence, and granted the government's motion to admit the statements. *Id*.

Chavez initially appears to argue that the government did not provide supporting evidence or corroborating facts substantiating its request that the statements be admitted. This is not accurate, as indicated by the Court's ruling, quoted above. Chavez also argues that admitting the co-conspirator statements was improper because her mere presence or association did not make her a "member of the conspiracy." (Def.'s Mot. New Trial, Dkt. # 166, at 9.) The Court, however, was not determining whether Chavez was guilty of conspiracy beyond a reasonable doubt, only whether the government's evidence showed by a preponderance of the evidence that a conspiracy existed, the defendant and the declarant were members of the conspiracy, and the statements were made in furtherance of the conspiracy. As the Court noted in its ruling, conspiracies are often secret and lack any direct evidence as proof of their existence; accordingly, circumstantial evidence is properly relied on to establish the existence of and membership in a conspiracy. *See Pust*, 798 F.3d at 603 ("Circumstantial evidence may be used to establish the existence of a conspiracy and a defendant's involvement in the conspiracy. In fact, circumstantial evidence is often the only proof available when no members of the conspiracy testify against their co-conspirators.") (internal citations omitted). The Court finds no error in its decision to grant the government's motion to admit co-conspirator statements.

5

To the extent Chavez's challenge to the admission of the co-conspirator statements is actually a challenge to the sufficiency of the evidence, it is denied for the reasons stated in this Court's ruling on Chavez's motion for judgment of acquittal. *See id.* (rejecting the defendant's "challenge to the admission of [co-conspirator] statements [because it] is simply a rehash of his challenge to the sufficiency of the evidence, and for the same reasons we found the evidence sufficient to support the verdict, we reject his evidentiary challenge.")

**Conclusion**

For the reasons stated above, the Court denies Chavez's motions for acquittal and for judgment notwithstanding the verdict.

**Date**: December 11, 2019

_____
**Ronald A. Guzmán**
**United States District Judge**